James E. Barton II, 023888
Jacqueline Mendez Soto, 022597
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
James@bartonmendezsoto.com
Jacqueline@bartonmendezsoto.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Benjamin Fisk, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Maricopa County, Arizona, a body politic; Maricopa County Sheriff Paul Penzone, in his official capacity, | |
| Defendants. | |

Plaintiff, Benjamin Fisk ("Plaintiff"), through undersigned counsel, hereby brings this Complaint against Maricopa County and Maricopa County Sheriff Paul Penzone, in his official capacity ("Sheriff Penzone") (collectively, "Defendants"), and alleges as follows:

**Introduction**

Plaintiff seeks to protect and vindicate his First Amendment rights guaranteed under the United States Constitution. Plaintiff brings this action under 42 U.S.C. § 1983 for the infringement of his constitutional rights. Plaintiff seeks damages, attorneys' fees and costs,

and a declaration that Defendants violated his clearly established constitutional rights as set forth in this Complaint. In support thereof, Plaintiff alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because this action seeks to relieve the deprivation, under color of state law, or rights secured by the Constitution and laws of the United States.

2. This Court is vested with the authority to grant declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue in the District Court for the District of Arizona is appropriate pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and all acts, omissions, and transactions occurred as referenced herein within this District.

**The Parties**

4. Plaintiff is a resident of Pinal County, Arizona, and at all material times has been an employee of MCSO.

5. Defendant, Maricopa County, is a political subdivision of Arizona that can sue and be sued in its own name. Maricopa County is responsible for the oversight of MCSO and for ensuring that MCSO activities comply with State and federal laws. Maricopa County is liable for the unlawful actions against Plaintiff for the exercise of his constitutional rights.

6. Sheriff Penzone is the Maricopa County Sheriff and is sued in his official capacity. Penzone, as Sheriff, is responsible for the operation of MCSO and has ultimate authority over the unlawful actions against Plaintiff for the exercise of his constitutional rights. Sheriff Penzone and MCSO are used interchangeably hereinafter.

**General Allegations**

7. Plaintiff began his career with MCSO as a detention officer in March 2005.

8. Plaintiff was promoted to the rank of detention sergeant on September 2, 2013, and has served in that capacity to the present.

9. Plaintiff founded the Maricopa County Law Enforcement Association ("MCLEA") on October 1, 2019, and is the current President of the MCLEA.

10. MCLEA is an Arizona nonprofit corporation whose purpose is to advocate for just and safe terms and conditions of employment for law enforcement personnel employed by MCSO.

11. Membership in the MCLEA is open to all MCSO detention and civilian personnel.

12. The MCLEA provides benefits to members, such having an MCLEA officer serve as a witness during a member's Professional Standards Bureau interviews and be of assistance on any employment-related questions they may have.

13. MCSO does not recognize MCLEA as a bargaining representative of MCSO employees.

//

## Free Speech Violations

14. On May 26, 2020, Plaintiff submitted a written request to MCSO for permission to distribute information to MCSO recruits about the MCLEA.

15. On July 30, 2020, Defendants created a policy related to solicitation.

16. The newly created policy states in part:

> **Solicitation:** Solicitation, posting of notices, and the distribution of non-official Office literature shall be done in such a manner to prevent conflicts of interest and interference with work.
>
> A. Dissemination of literature and information regarding the following organizations, programs, or activities is permissible and subject to the oversight of a bureau chief:
> …
> 6. Constitutionally Protected Speech: Permitted within reasonable parameters to time, place, and manner restrictions.
> …
> B. Employees are prohibited from posting, soliciting, distributing, or circulating literature, selling merchandise, or promoting support for any cause or organization during their work time, or during the work time of the employees to whom such activity is directed, unless prior approval is granted by their bureau chief and permissible, as specified in this Office Policy.
> …
> D. Examples of acceptable and unacceptable solicitation are as follows:
>
> 1. Acceptable Solicitation: Maricopa County blood drive, Combined Charitable Campaign, E.A.S.E. Program, Maricopa County benefits/open enrollment and wellness programs. Special Olympics, employee assistance breakfast/lunch sales, can food/school supply/toy drives sponsored by the Office/Maricopa county, and any other event that supports the mission of the Office and approved by a bureau chief.

2. Unacceptable Solicitation: Organization membership applications or promotion of a specific event or vendor (other than those sanctioned by the Office/Maricopa County).

17. Pursuant to the newly created solicitation policy, Defendants denied Plaintiff's request.

18. MCSO allows other organizations, associations, and/or groups access to public and restricted-public areas and employee breakrooms.

19. Examples of similar groups to whom MCSO grants access include the Sheriff Deputy Law Enforcement Association, Correctional Peace Officers Foundation, and various college recruiting representatives, among other groups.

20. In July 2020, Plaintiff provided several interviews to the press regarding matters of public concern, namely the effects of COVID-19 within Maricopa County jails and the potential effects on MCSO personnel and their families.

21. Plaintiff provided the interviews as a private citizen in his capacity as President of the MCLEA.

22. On August 22, 2020, MCSO placed Plaintiff on administrative leave and under investigation.

23. On August 24, 2021, MCSO notified Plaintiff of the following Internal Affairs investigations ("IA Investigations") against him:

   a. IA 2020-0376, for allegations under policy CP-2 Code of Conduct, Abuse of Position or Authority, Public Appearances and Statements, and Performance or Dereliction of Duty;

      b. IA 2020-0419, for allegations under policies CP-2, Code of Conduct, or CP-3, Workplace Professionalism;

      c. IA 2020-0427, for allegations under policies CP-2, Performance or Dereliction of duty, and/or CP-5, Truthfulness;

      d. IA 2020-0428, for allegations under policies CP-2 Code of Conduct, Political Activity, and CP-3, Workplace Professionalism; and

      e. IA 2020-0431, for allegations under CP-3 Workplace Professionalism.

24. The notices of investigation specifically allege Plaintiff's comments to the press and his work for the MCLEA as violations of policy and falsely accuse him of engaging in political work during work time and using MCSO resources for non-business purposes.

25. While on administrative leave, MCSO made the following demand on Plaintiff:

> You will report in by calling the Professional Standards Bureau … between 0900 hours and 0930 hours each day Monday through Friday, except holidays. While on Administrative Leave with Pay you will remain at your place of residence and you will make yourself available to Sheriff's Office administrative investigators between 0900 and 1700 hours Monday through Friday. While on Administrative Leave with Pay, any off-duty permits that have been authorized for you are immediately suspended, you are not to work off-duty.

26. On October 21, 2020, MSCO ordered the polygraph examination of Plaintiff.

27. Plaintiff remained on administrative leave for 97 days without further explanation, meeting MCSO's demands stated above.

28. MCSO ended Plaintiff's administrative leave on or about November 27, 2020.

29. Plaintiff's work performance is reviewed annually and documented in an Employee Performance Appraisal ("EPA").

30. Plaintiff's annual EPAs had always met standards.

31. On December 8, 2020, after 15 years as an employee of MCSO and seven years as detention sergeant, MCSO issued Plaintiff an EPA stating that he did not meet standards.

32. Plaintiff objected to the EPA rating and requested an administrative review of his EPA.

33. On or about January 19, 2021, MCSO placed a hold on the administrative review of Plaintiff's EPA pending the conclusion of the IA Investigations.

34. The reason to hold the EPA review in abeyance pending the IA Investigations was due to overlapping issues between the EPA and the IA Investigations. Issues related to an IA investigation may not be discussed outside the IA investigation process.

35. In or about March 2021, Maricopa County had approved a Performance-Based Retention Pay Plan, which would grant a 3% pay raise to employees who had a current EPA of meeting standards.

36. MCSO denied Plaintiff the raise because his EPA did not meet standards.

37. Plaintiff made several requests that MCSO proceed with the EPA review in order to clear the unwarranted, negative evaluation and make Plaintiff eligible for the raise.

38. On August 20, 2021, Plaintiff, through undersigned counsel, notified MCSO in writing that it was in violation of Plaintiff's constitutional rights and demanded Plaintiff be made whole, including that MCSO withdraw the retaliatory IA Investigations, issue him a just EPA, and retroactively grant the pay raise.

39. In or about September 2021, MCSO proceeded with the EPA review.

40. On or about October 6, 2021, MCSO completed the EPA review and changed the EPA rating to "meets minimum performance standards."

41. On or about November 4, 2021, MCSO notified Plaintiff that it would issue the raise he was previously denied and that the raise would be retroactive to July 2021.

42. While MCSO corrected the unwarranted EPA and notified Plaintiff that it will issue the pay raise, MCSO continues to pursue the retaliatory investigations against Plaintiff.

**Count 1**
**First Amendment Freedom of Speech Violation, 42 U.S.C. § 1983**

43. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

44. The First Amendment protects against State infringement on the exercise of free speech.

45. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

46. The State may not impair the effective exercise of the right to discuss freely industrial relations which are matters of public concern. *Thornhill v. State of Alabama*, 310 U.S. 88, 104 (1940).

47. Plaintiff petitioned for permission to speak to employees about the MCLEA and MCLEA benefits.

48. Defendants allow other associations or groups to speak to employees.

49. MCSO issued a new no-solicitation policy after Plaintiff's request for access in order to prohibit Plaintiff from exercising his constitutional rights.

50. This unequal treatment of Plaintiff and his association is a content-based restriction in open facilities within MCSO.

51. Banning Plaintiff's speech while permitting similar groups to speak on similar subjects constitutes viewpoint discrimination.

52. Defendants' no-solicitation policy chills, deters, and restricts Plaintiff from freely expressing his views with other employees who support the MCLEA.

53. Defendants' no-solicitation policy, as interpreted and applied by Defendants to prohibit MCLEA-related speech is not the least restrictive means necessary to serve any compelling interest which Defendants seek to secure.

54. Defendants' no-solicitation policy as interpreted and applied violate Plaintiff's right to free speech under the first Amendment.

55. Plaintiff requests equitable and legal relief as set forth in the Prayer for Relief.

**Count 2**
**First Amendment Freedom of Association Violation, 42 U.S.C. § 1983**

56. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

57. The First Amendment guarantees the right both to speak and to associate. *See Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 465 U.S. 271, 288 (1984).

58. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama*, 356 U.S. 449, 460 (1958).

59. "At least in the context of organized labor, the impingement of First Amendment rights must, at a minimum, satisfy 'exacting scrutiny'; i.e., it must 'serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Mentele v. Inslee*, 916 F.3d 783, 790 (9th Cir. 2019) (citations omitted).

60. Plaintiff's association with the MCLEA is an expressive association.

61. Defendants violated Plaintiff's right to freedom of association by denying his group the right to use MCSO facilities to assemble and engage in expressive association, a right Defendants extend to other groups.

62. Defendants' no-solicitation policy of completely banning Plaintiff from his expressive speech is not the least restrictive means of serving any compelling interest which Defendants seek to secure.

63. Plaintiff requests equitable and legal relief as set forth in the Prayer for Relief.

**Count 3**
**First Amendment Freedom of Speech Retaliation, 42 U.S.C. § 1983**

64. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

65. Plaintiff made statements to the press as a private citizen and President of the MCLEA.

66. Plaintiff's speech related to matters of public concern.

67. Plaintiff work on behalf of the MCLEA is protected speech and association under the First Amendment.

68. "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (citations omitted).

69. MCSO placed Plaintiff on administrative leave in retaliation for his protected activities.

70. MCSO placed Plaintiff under administrative investigation in retaliation for his protected activities.

71. MCSO issued Plaintiff a negative EPA in retaliation for his protected activities.

72. As a result of MCSO's retaliatory action of issuing a negative EPA, Plaintiff was denied a pay increase.

73. Defendants' retaliatory actions are intended to chill Plaintiff from engaging in his constitutionally protected rights.

74. Even though Defendants' issued Plaintiff a new EPA and claim to be issuing him a pay raise, Defendants forced Plaintiff to bear the burden of overturning the arbitrary EPA.

75. Further, Defendants forced Plaintiff to hire legal counsel to protect his constitutional rights.

76. Plaintiff seeks monetary damages caused by caused by Defendants' unlawful actions, including compensatory damages.

77. Plaintiff requests equitable and legal relief as set forth in the Prayer for Relief.

**Prayer for Relief**

WHEREFORE, Plaintiff asks this Court:

A. to render Declaratory Judgment declaring unconstitutional Defendants' actions and policy of prohibiting Plaintiff from speaking and distributing information about the MCLEA and interfering with employees' freedom to associate with the MCLEA;

B. to declare that Defendants unlawfully retaliated against Plaintiff for engaging in constitutionally protected activity;

C. to award Plaintiff compensatory damages suffered as a result of Defendants' unlawful retaliation;

D. to award Plaintiff nominal damages for the loss of his constitutional rights as set forth in this Complaint;

E. to award Plaintiff his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C.§ 1988 and other applicable law; and

F. to grant any other relief that the Court deems equitable, just, and proper.

## Jury Demand

Plaintiff respectfully requests a trial by jury on all issues in this matter triable to a jury.

DATED this 10th of November, 2021.

BARTON MENDEZ SOTO PLLC

_____
Jacqueline Mendez Soto
James E. Barton II
*Attorneys for Plaintiff*