WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Fisk, | No. CV-21-01914-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

Before the Court are Plaintiff's Partial Motion for Summary Judgment (Counts 1 and 2) (Doc. 78) and Defendants' Amended Motion for Summary Judgment (Doc. 80). The Motions are fully briefed. (Docs. 78, 80, 82, 83, 92, 93, 98.) The Court held oral argument on February 7, 2024. The Court rules as follows.

**I.    FACTS**

Plaintiff Benjamin Fisk is a detention sergeant employed by the Maricopa County Sheriff's Office ("MCSO"). (Doc. 78-1 at 7.) In 2019, he founded the Maricopa County Law Enforcement Association ("MCLEA"). (*Id.* at 7, 12-13.) At the time of the events at issue, he served as its president. (*Id.* at 7, 12-13, 32, 69, 235-36, 238, 250.)

Plaintiff describes MCLEA as "a nonprofit employee association established . . . . to promote a positive role of the police, deputy, detention, and probation profession through education, communication, and support of members." (*Id.* at 7.) It "is a membership organization, which advances its members' interest[s] by securing rights and benefits through diligent representation." (Doc. 78 at 2; *see also* Doc. 78-1 at 7.)

On May 26, 2020, Plaintiff petitioned MCSO for permission to speak to his coworkers about MCLEA. (Doc. 78-1 at 3-4.) His request stated:

> I would like to request that permission be granted to speak to the recruit classes and other staff members about the benefits of being a member of MCLEA. Maricopa County Policy and Sheriff's Office Policy allow for this to take place. The intent is to approach the recruit classes during their lunch period for about 15 minutes. Other employees would be contacted before briefings in non-work areas.

(*Id.* at 3 (cleaned up).) Ultimately, on August 6, 2020, the request was denied pursuant to newly enacted Office Policy CP-2.32. (*Id.* at 333.)

Around the same time, Plaintiff made two statements to the media about COVID-19 within MCSO. (Doc. 83-1 at 148; Doc. 83-2 at 3.) On July 7, 2020, Plaintiff said that two recently deceased MCSO employees had been ailing from COVID-19. (Doc. 83-1 at 148.) On July 20, 2020, Plaintiff told a reporter that several MCSO employees had contracted COVID-19, that tensions were high at MCSO, and that "[t]here are things that can be done that the sheriff's office can do better and they're just not being done." (Doc. 83-2 at 3.) Many of Plaintiff's superiors were aware of, and surprised by, Plaintiff's statements. (Doc. 83-1 at 117.)

Shortly thereafter, Plaintiff became the subject of a disciplinary investigation. (*See* Doc. 80-5 at 12.) In July and August 2020, MCSO received five complaints alleging that Plaintiff had violated office policy. (Doc. 80-4 at 27-28, 30, 32, 34, 36.) MCSO initiated an investigation and Plaintiff was placed on paid administrative leave. (Doc. 80-5 at 12.) In August 2020, the investigation was assigned to an outside investigator for review and follow up. (*Id.*) The investigator determined that Plaintiff was not a candidate for major discipline, and he was returned to active duty. (Doc. 29 ¶ 36; Doc. 80 at 5.) The investigation is still ongoing. (Doc. 80 at 5.)

In December 2020, Plaintiff received a negative employee performance appraisal ("EPA") from Lt. Deana Wierschem. (Doc. 80-5 at 14-26.) Lt. Wierschem was not Plaintiff's direct supervisor but conducted his EPA because Plaintiff had filed a complaint against his direct supervisor. (Doc. 80-1 at 24.) Lt. Wierschem concluded that Plaintiff had

not met minimum performance standards because he failed to complete his daily paperwork and meet assigned deadlines. (Doc. 80-5 at 14, 18.) Because of the unfavorable EPA, Plaintiff was not eligible for a merit-based pay increase. (Doc. 29 ¶ 85; Doc. 80-5 at 14, 17, 19-20.) On administrative review, however, MCSO agreed to amend the EPA to reflect that Plaintiff had met minimum performance standards. (Doc. 80-1 at 24-26; Doc. 80-5 at 28-32.) Plaintiff received the associated raise, retroactive to the original date of eligibility. (Doc. 29 ¶¶ 49-50; Doc. 80 at 5.)

Plaintiff filed this lawsuit in November 2021. (Doc. 1.) In his Amended Complaint, Plaintiff asserts three claims under 42 U.S.C. § 1983: (1) violation of his First Amendment right to freedom of speech; (2) violation of his First Amendment right to freedom of association; and (3) retaliation for his exercise of his First Amendment right to freedom of speech. (Doc. 29 ¶¶ 51-90.) Now, Plaintiff moves for summary judgment on the first two claims. (Doc. 78.) Defendants move for summary judgment on all claims. (Doc. 80.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial.").

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The Court does not have a duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## III.  DISCUSSION

### A.  Freedom of Speech Violation

"[C]itizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 573 U.S. 228, 231 (2014). "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). But the Supreme Court has also recognized that this right has limits. Indeed, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego, California v. Roe*, 543 U.S. 77, 80 (2004).

"The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Il.*, 391 U.S. 563, 568 (1968). This inquiry is known as the *Pickering* balancing test, and it "provides the framework for analyzing whether the employee's interest or the government's interest should prevail in cases where the government seeks to curtail the speech of its employees." *Lane*, 573 U.S. at 236.

In the First Amendment retaliation context, the Ninth Circuit has distilled *Pickering* and its progeny into a five-step analysis:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the

general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). When the inquiry is limited to whether a First Amendment violation occurred, as is the case with Plaintiff's first claim, only steps one, two, and four are relevant. *See e.g., Hernandez v. City of Phoenix*, 43 F.4th 966, 976-79 (9th Cir. 2022); *Berry v. Dept. of Soc. Servs.*, 447 F.3d 642, 649-52 (9th Cir. 2006); *Tucker v. State of Cal. Dept. of Educ.*, 97 F.3d 1204, 1210-14 (9th Cir. 1996); *Johnson v. Multnomah County, Oregon*, 48 F.3d 420, 422-27 (9th Cir. 1995). Because this test provides the exclusive means for determining whether an employee's freedom of speech rights have been violated by their government employer, the Court does not rely on the portion of the parties' briefing that applies a traditional forum analysis. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960-64 (9th Cir. 2011).

At step one, the plaintiff bears the burden of demonstrating that his or her speech addressed an issue of public concern. *Eng*, 552 F.3d at 1070; *see also Connick v. Myers*, 461 U.S. 138 (1983). Speech involves a matter of public concern if it "can fairly be considered as relating to any matter of political, social, or other concern to the community or is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (cleaned up); *see also Johnson*, 48 F.3d at 422. In contrast, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (cleaned up).

Here, Plaintiff's request to speak about "the benefits of being a member of [MCLEA]" did not involve a matter of public concern. (Doc. 78-1 at 3.) Plaintiff did not request to speak about a newsworthy event, engage in political or social debate, expose government inefficiency or corruption, or discuss anything else that at least some members of the general public would have been interested in. *See e.g.*, *Rankin v. McPherson*, 483 U.S. 378 (1987); *Pickering*, 391 U.S. 563; *Lane*, 573 U.S. 228. Instead, he merely sought

to expand membership in his private business. MCLEA's expansion is not of concern to the public, and it is "of no relevance to the public's evaluation of the performance of" MCSO's duties. *Coszalter*, 320 F.3d at 973.

Plaintiff argues that his speech involved a matter of public concern because "[s]olicitation for membership in a group, including requests to pay, contribute, or support a group, is constitutionally protected speech" and "[i]ndustrial relations are also a matter of public concern." (Doc. 78 at 13.) Plaintiff relies on cases that do not apply. First, *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980), is inapposite. That case did not involve *Pickering* or restrictions on employee speech by a government employer. *Village of Schaumberg*, 444 U.S. 620. Second, while *Thornhill v. State of Alabama*, 310 U.S. 88, 102-04 (1940), and *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464-65 (1979), arguably recognize Plaintiff's First Amendment right to disseminate facts surrounding labor disputes and advocate on behalf of his fellow MCLEA members, those cases do not suggest that Plaintiff's attempts to expand membership in MCLEA are a matter of public concern.

Because Plaintiff's request to speak to his fellow employees about the benefits of joining MCLEA did not involve a matter of public concern, the Court grants summary judgment in Defendants' favor on Plaintiff's first claim. *Johnson*, 658 F.3d at 961-62 ("Because [*Eng* prescribes] sequential steps, a plaintiff's failure to satisfy a single one necessarily concludes [the] inquiry.") (internal quotations omitted).

### B.     Freedom of Association Violation

The First Amendment also protects Plaintiff's right to associate with others "for the purpose of engaging in protected activity." *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023). But here, the record lacks any evidence that Defendants prohibited Plaintiff from associating with MCLEA or its members. Plaintiff makes no argument to the contrary. (*See generally* Docs. 78, 83, 93.) To the extent Plaintiff argues that MCSO's denial of his request to speak also violated his right to freedom of association, that argument fails for the reasons already discussed. *Hudson v. Craven*, 403 F.3d 691, 695-98 (9th Cir. 2005)

(applying the same *Pickering*-based analysis to plaintiff's freedom of speech and freedom of association claims in a case where those claims were intertwined). Accordingly, the Court grants summary judgment in Defendants' favor on Plaintiff's second claim.

### C. Freedom of Speech Retaliation

Plaintiff contends that he was retaliated against because of statements he made to the media during the COVID-19 pandemic. (Doc. 83 at 8-10, 14.) While the parties analyze this claim using the traditional test for freedom of speech retaliation, the Ninth Circuit has made clear that, where the government is both sovereign and employer, the test set forth in *Eng* applies. *See e.g., Hernandez*, 43 F.4th at 976; *Howard v. City of Coos Bay*, 871 F.3d 1032, 1044-45 (9th Cir. 2017); *Rodriguez-Malfavon v. Clark Cnty. Sch. Dist.*, 706 Fed. Appx. 348, 348 (9th Cir. 2017).

First, Plaintiff's statements to the media, as reported on July 7 and 20, 2020, entirely addressed a matter of public concern—the impact of COVID-19 on MCSO and its employees. "Subjects that receive media coverage 'almost by definition involve matters of public concern.'" *Hernandez*, 43 F.4th at 978 (quoting *Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997)) (cleaned up). Defendants argue that Plaintiff's statements merely reported facts and expressed general dissatisfaction, but the relative "value" of Plaintiff's speech does not factor into the Court's determination of whether, and to what extent, that speech addressed a matter of public concern.

Second, Plaintiff has demonstrated that he spoke as a private citizen rather than as a public employee. *Eng*, 552 F.3d at 1071. "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (cleaned up). Here, Plaintiff had no official duty to speak to the media about the impact of COVID-19 on MCSO and its employees. Nor was his speech the product of performing his official job duties. Thus, he spoke as a private citizen. Defendants do not argue otherwise. (*See generally* Docs. 80, 92.)

Third, a reasonable jury could conclude that Plaintiff's protected speech was a substantial or motivating factor for his negative EPA and ongoing disciplinary investigation. Plaintiff bears the burden at this step, and the question is "purely [one] of fact." *Eng*, 552 F.3d at 1071. To demonstrate that retaliation was a substantial or motivating factor behind an employer's adverse employment actions,

> [A]n employee may introduce evidence that: (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the preferred explanations for the adverse action were false and pretextual.

*Candelaria v. City of Telleson, Arizona*, 721 Fed. Appx. 588, 590-91 (9th Cir. 2017).

Plaintiff has presented evidence that the adverse employment actions occurred just a few months after his statements to the media (*See* Doc. 80-5 at 12, 14-26) and that his supervisors were aware of his speech prior to taking the adverse employment actions (Doc. 83-1 at 117). A reasonable jury may infer from these circumstances that Plaintiff's statements were a substantial or motivating factor for the adverse employment actions that came shortly thereafter. *See e.g., Anthoine v. North Central Cntys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010) ("We have held that proximity in time may support an inference of retaliation sufficient to survive summary judgment.").

Fourth, Defendants lacked an adequate justification for treating Plaintiff differently than members of the general public. On this step, the burden shifts back to Defendants to demonstrate that MCSO's "legitimate administrative interests outweigh[ed Plaintiff's] First Amendment rights." *Eng*, 552 F.3d at 1071. Where the speech substantially (or, as here, entirely) involves a matter of public concern, a stronger showing of government interests is necessary. *Lane*, 573 U.S. at 242.

Defendants argue that Plaintiff's statements to the media were vague, unhelpful, and carried a limited First Amendment interest compared to MCSO's powerful interest "in the peaceful and efficient operation of its detention facilities." (Doc. 80 at 11.) But again, because Plaintiff's speech entirely addressed a matter of public interest—the impact of a

global pandemic on sensitive local government operations—it carried a strong First Amendment interest. *Lane*, 573 U.S. at 242. And while MCSO's articulated interests are likewise strong, Plaintiff's tame and uninflammatory statements presented a very minimal threat to those interests.

Fifth, and finally, a reasonable jury could conclude that Defendants would not have taken the adverse employment actions absent the protected speech. Defendants bear the burden on this "pure[] question of fact." *Eng*, 552 F.3d at 1072. As for the negative EPA, Defendants argue that Plaintiff would have received the same review absent his comments to the media because Lt. Wierschem had a justified and independent basis for it—that Plaintiff was not timely completing his paperwork. (Doc. 80 at 13.) But a reasonable jury may reject this explanation and find instead, based on the evidence in the record (including the negative EPA's temporal proximity to Plaintiff's protected speech), that it is pretextual.

Additionally, Defendants argue that Plaintiff's disciplinary investigation would have occurred regardless of his statements to the media because, once MCSO received complaints against Plaintiff, it was required by policy to open an investigation. (*Id.* at 14-15.) But like the plaintiff in *Eng*, Plaintiff here suggests that the "apparently baseless charges were *themselves* motivated by his exercise of his First Amendment rights." 552 F.3d at 1074 (emphasis in original). For example, the first (and longest) complaint against Plaintiff was received just one day following Plaintiff's second statement to the media. (Doc. 80-4 at 27.) The other complaints were received shortly afterward. (*Id.* at 30, 32, 34, 36.) Moreover, a reasonable jury could find that the investigation, once begun, was handled unfavorably or unjustifiably extended because of Plaintiff's protected speech.

Because a reasonable jury could find for Plaintiff on his freedom of speech retaliation claim, the Court denies summary judgment on that claim.

**IV.   CONCLUSION**

A reasonable jury could not find that Defendants violated Plaintiff's First Amendment right to freedom of speech by denying his request to speak to his coworkers about the benefits of joining MCLEA. Nor could one find that Defendants violated

Plaintiff's First Amendment right to freedom of association. A reasonable jury could, however, find that Defendants retaliated against Plaintiff for his protected remarks to the media about COVID-19's impact on MCSO and its employees.

Accordingly,

**IT IS ORDERED** that Plaintiff's Partial Motion for Summary Judgment (Counts 1 and 2) (Doc. 78) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Amended Motion for Summary Judgment (Doc. 80) is **granted in part and denied in part** as follows:

1. The Court enters summary judgment in favor of Defendants on Plaintiff's claims for violations of his First Amendment rights to freedom of speech and freedom of association.

2. Plaintiff's claim for retaliation for his exercise of his First Amendment right to freedom of speech shall remain pending.

**IT IS FURTHER ORDERED** that, consistent with this Order, Defendants Brian C. Lee, Tiffany Shaw, Andrew Mesquita, and Barry Roska are dismissed. The Clerk of Court shall not enter judgment at this time.

**IT IS FINALLY ORDERED** that the Court will set a trial setting conference by separate order.

Dated this 23rd day of February, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge